**WO**                                                                                                                    JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tramane Lopez Mitchell, | No. CV 06-0969-PHX-MHM (MHB) |
| Plaintiff, | **ORDER** |
| vs. | |
| Lori Demski, et al., | |
| Defendants. | |

Plaintiff Tramane Lopez Mitchell brought this civil rights actions under 42 U.S.C. § 1983 against various officers from the Phoenix Police Department (Doc. #5). Plaintiff alleged that Defendants Lori Demski, Kris Packard, Derald G. Rine, Michael Ross, Daniel Rogers, and Donald Vallejo placed Plaintiff's life in danger and used excessive force during arrest (id. at 4-5).[1] Before the Court is Defendants' Motion for Summary Judgment, which has been fully briefed by the parties (Doc. ##30, 43, 45). The Court will grant Defendants' motion and terminate this action.

**I.     Background**

Plaintiff's claim arose on December 22, 2005, when he was arrested outside of a Phoenix convenience store (Doc. #31, Defs.' Statement of Facts (DSOF) ¶ 1; Ex. C, Trial Tr. 18:16-20, June 1, 2006). Plaintiff, who admitted to using drugs that night, was in the parking

---

[1]Upon screening, the Court dismissed Count III for failure to state a claim (Doc. #6).

1  lot of the convenience store when he began hallucinating and believed that there were snakes
2  in his pants (Doc. #31, Ex. C, Trial Tr. 20:22-21:7; 23:1-25).  In response to his
3  hallucinations, Plaintiff screamed repeatedly and stripped off his clothes (Doc. #31, DSOF
4  ¶¶ 7-8).  The convenience store clerk called the police, and Packard and Demski arrived at
5  the scene, followed by Rine, Rogers, and Ross (id. ¶¶ 10-12).  Packard and Demski told
6  Plaintiff to put his clothing on and leave the area but Plaintiff refused (id. ¶¶ 15-16).  The
7  store clerk informed the officers that Plaintiff was trespassing (id. ¶ 17; Doc. #43 at 3).  From
8  this point, the parties' versions of the events differ.

9  Plaintiff claimed that after he refused to put on his clothes, Packard slammed his face
10 into the concrete and began to assault him by placing Plaintiff in a choke hold and striking
11 him repeatedly in the right side of his face (Doc. #43 at 3).  Plaintiff claims Demski and Rine
12 then joined Packard in the assault on Plaintiff (id.).  Plaintiff alleged that he could not move
13 or fight back and that he could not resist arrest; he could only lie face down in the gravel and
14 beg the officers to stop (id.).  Plaintiff further alleges that Packard, Demski, and Rine were
15 on Plaintiff's body, holding him to the ground while the other officers punched and kicked
16 Plaintiff (id.).  While the officers were yelling at Plaintiff to stop resisting, Plaintiff claims
17 he was crying that he was not resisting.  Demski then moved to the front of Plaintiff and
18 allegedly kicked him in the face a number of times (id.).  After a few minutes, officers tased
19 Plaintiff in the back and then allegedly continued to beat him.  Plaintiff claimed that when
20 he began to lose consciousness, the officers got off him and placed him in handcuffs (id.;
21 Doc. #5 at 4-5).

22 Defendants contend that after Plaintiff refused to put his clothing on, Packard gathered
23 up the clothes and dropped them at the edge of the property (Doc. #31, DSOF ¶ 19).  Packard
24 and Demski then each grabbed one of Plaintiff's arms and escorted him from the property
25 (id. ¶ 20).  When they reached the edge of the property, Plaintiff turned around and punched
26 Packard in the face (id. ¶ 21).  Packard attempted to secure Plaintiff in handcuffs, but
27 Plaintiff fought the arrest by refusing to put his hands behind his back.  Defendants claimed
28 that Plaintiff and Packard wrestled each other to the ground (id. ¶ 25).  When Demski and

- 2 -

1  Rine attempted to help Packard, Plaintiff fought all three officers; he bit Demski, punched
2  Rine in the face, kicked Packard in the chest, and landed several more strikes before Rogers
3  and Ross eventually joined the fray (id. ¶¶ 26-28).  Ross then used his taser to try and subdue
4  Plaintiff; however, the taser did not have any effect on Plaintiff (id. ¶¶ 29-30).  The officers
5  were able to eventually take Plaintiff into custody (Doc. #31, Ex. F, Trial Tr. 105:11-22, May
6  31, 2006).

7  Following the arrest, Vallejo—who was not involved in the physical
8  altercation—recorded the condition of Plaintiff and the arresting officers (Doc. #31, DSOF
9  ¶ 4; Ex. B, Vallejo Aff. ¶¶ 3-4).

10  Plaintiff was later tried and convicted of aggravated assault and resisting arrest (Doc.
11  #31, DSOF ¶ 35).  At trial, Packard and Rine admitted to striking Plaintiff in the face in an
12  attempt to subdue Plaintiff (id. ¶¶ 32-33).

13  Defendants moved for summary judgment on the ground that there are no material
14  issues of fact outstanding (Doc. #30).  After the Court granted two extensions of time to
15  respond to Defendants' motion (Doc. ##36, 42), Plaintiff moved under Federal Rule Civil
16  Procedure 56(f) for a continuance to obtain records in discovery (Doc. #43).  Attached to
17  Plaintiff's motion was a legal argument and summary of the facts opposing summary
18  judgment (id.).  The Court denied the request for a continuance and ordered Plaintiff's
19  motion to be docketed and construed as a "Motion for Extension of Time for 30 days, and
20  in the alternative Response to Summary Judgment Motion" (Doc. #44).  In their reply,
21  Defendants argued that Plaintiff failed to establish the existence of a genuine issue of
22  material fact that would support a verdict in his favor (Doc. #45).

23  **II.    Legal Standard**

24  **A.    Summary Judgment**

25  A court must grant summary judgment "if the pleadings, depositions, answers to
26  interrogatories, and admissions on file, together with the affidavits, if any, show that there
27  is no genuine issue as to any material fact and that the moving party is entitled to judgment
28  as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317,

- 3 -

1  322-23 (1986). Under summary judgment practice, the moving party bears the initial
2  responsibility of presenting the basis for its motion and identifying those portions of the
3  record, together with affidavits, that it believes demonstrate the absence of a genuine issue
4  of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th
5  Cir. 2001) (en banc). In assessing whether a party has met its burden, the court views the
6  evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles,
7  66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the
8  nonmovant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

9  If the moving party meets its burden with a properly supported motion, the burden
10 then shifts to the opposing party to present specific facts that show there is a genuine issue
11 for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995);
12 see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n. 4 (1986). If the moving party
13 presents evidence that, taken by itself, would establish the right to a directed verdict at trial,
14 the motion for summary judgment must be granted in the absence of any significant probative
15 evidence tending to support the opposing party's theory of the case. First Nat'l Bank v.
16 Cities Serv. Co., 391 U.S. 253, 290 (1968); THI-Hawaii, Inc. v. First Commerce Fin. Corp.,
17 627 F.2d 991, 993-94 (9th Cir. 1980). Conclusory allegations, unsupported by factual
18 material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d
19 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise
20 provided by Rule 56, designate specific facts that show there is a genuine issue for trial.
21 Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076.

22 **B.     Excessive Force**

23 A claim that law enforcement officers have used excessive force in the course of an
24 arrest should be analyzed under the Fourth Amendment and its "reasonableness" standard.
25 Graham v. Connor, 490 U.S. 386, 395 (1989). The reasonableness of the use of force "must
26 be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20
27 vision of hindsight." Id. at 396. When determining whether the totality of the circumstances
28 justifies the degree of force, the court must consider "the facts and circumstances of each

1  particular case, including the severity of the crime at issue, whether the suspect poses an
2  immediate threat to the safety of the officers or others, and whether he is actively resisting
3  arrest or attempting to evade arrest by flight." Id. The inquiry is "whether the officers'
4  actions are 'objectively reasonable' in light of the facts and circumstances confronting them,
5  without regard to their underlying intent or motivation." Id. at 397 (citations omitted).

**III.   Analysis**

Defendants' summary judgment motion rests on three grounds: (1) Plaintiff's claims have not yet accrued under Heck v. Humphrey, 512 U.S. 477 (1994); (2) Defendants are entitled to qualified immunity; and (3) Plaintiff failed to state a valid claim against Vallejo (Doc. #30).

**A.   Heck**

To recover damages for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. Heck, 512 U.S. at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487. In other words, if the conviction or sentence arises out of the same facts that underlie the alleged unlawful behavior for which damages are sought, the § 1983 suit must be dismissed. Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996). If a state prisoner seeks damages in a § 1983 suit, a district court must therefore consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if so, the complaint must be dismissed. Heck, 512 U.S. at 487.

The Ninth Circuit Court addressed the circumstances under which Heck bars excessive force claims arising out of an incident in which the plaintiff was convicted of resisting arrest. See Smith v. City of Hemet, 394 F.3d 689, 693 (9th Cir.) (en banc), cert. denied, 545 U.S. 1128 (2005). As the Smith opinion explained, an essential element of a conviction for resisting a peace officer pursuant to California law is that the police officer

- 5 -

was "engaged in the performance of his official duties." Id. at 695. Under California law, this means that the police officer was engaged in "lawful" conduct, including not using excessive force. See id. at 695-96 (citing California state court decisions). Thus, if a plaintiff was convicted for resisting a police officer during the course of an arrest, his subsequent § 1983 claim that the police officer used excessive force during the course of that arrest would, if successful, necessarily undermine the conviction. Id. at 697-98. In such circumstances, the Heck bar applies. Id.

It is undisputed that Plaintiff was convicted of resisting arrest and aggravated assault on Packard, and that this conviction has not been expunged, reversed, invalidated or otherwise called into question (Doc. #31, DSOF ¶ 35). Although Plaintiff's conviction in this case was under Arizona law rather than California law, this makes no difference for the present analysis. A defendant can only be convicted of resisting arrest in Arizona if the officer's conduct was "lawful" when effecting the arrest; an officer's conduct was not "lawful" if he used excessive force. See Ariz. Rev. Stat. 13-404(B)(2) (a person may not use physical force to resist arrest by an officer unless the physical forced used by the officer exceeds that allowed by law); State v. Fontes, 986 P.2d 897, 901 (Ariz. Ct. App. 1998) (if the force used to make the arrest is reasonable, the defendant is not justified in using physical force to resist the arrest); see also State v. Sanders, 575 P.2d 822, 826 (Ariz. Ct. App. 1978) (no unnecessary or unreasonable force shall be used in making an arrest and any excessive force used by an officer may be countered lawfully).

Smith drew a distinction between a plaintiff who resists officers before they use force, and a plaintiff who resists during the course of the arrest and accompanying application of force. Id. at 697-98. In Smith, the Court identified different "phases" of the encounter between the plaintiff and the officer, and held that if Smith's conviction was for his resisting the officers during the "investigative phase," i.e. before the officers had begun to arrest and use force against him, then Heck did not bar his claims that the force was excessive. Id. at 698. On the other hand, if Smith's conviction was for resisting the officers while the officers

1 were effecting arrest and using the purportedly excessive force, then Heck did bar his claims
2 that the officers used excessive force. Id. at 698-99.

3       Here, Plaintiff's assault on Packard and the officers' use of force against him did not
4 occur in different "phases" of the incident. Plaintiff did not dispute that Defendants
5 determined there was probable cause to arrest Plaintiff after the store clerk informed them
6 that Plaintiff was trespassing (DSOF ¶ 17). Under Arizona law, an arrest is not complete
7 until the individual's liberty of movement is interrupted and restricted by officers making
8 the arrest. Sanders, 575 P.2d at 825 (citation omitted). And Plaintiff admitted that the
9 officers' use of force did not occur until *after* he continued to disobey their verbal
10 commands, they attempted to move him from the property, and he began "pushing" his feet
11 in an attempt to resist their escort (Doc. #31, Ex. C, Trial Tr. 27:5-29:10). The evidence
12 reflects that the entire incident involving the officers' use of force was a single course of
13 events. As such, under the reasoning of Smith, Heck bars Plaintiff's claim that Defendants'
14 use of force against him was excessive.

15       Moreover, in his response memorandum, Plaintiff argues that he is not bringing a
16 claim against the state for false imprisonment, or against the "Judge or the Jury for making
17 a mistake convicting me for a crime I didn't commit" (Doc. #43). Plaintiff's implication that
18 his conviction was invalid further demonstrates that the claims in his § 1983 action stem from
19 the same facts that gave rise to his arrest and conviction. Because a decision in Plaintiff's
20 favor would necessarily imply the invalidity of that conviction, Plaintiff's claim is barred and
21 summary judgment will be granted for Defendants.

22       **B.**    **Qualified Immunity and Vallejo**

23       Until Plaintiff's conviction is reversed, expunged, declared invalid, or called into
24 question by the issuance of a writ of habeas corpus, Plaintiff's claim has not accrued. Heck,
25 512 U.S. at 486-87. Thus, a suit for damages is premature, as is any consideration of whether
26 Defendants would be entitled to qualified immunity. Similarly, the claim alleging that
27 Vallejo used excessive force has not accrued; the Court need not address the remaining
28 argument concerning whether Plaintiff stated a valid claim against Vallejo.

- 7 -

1  **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. #30) is
2  **granted**.  The Clerk of Court shall dismiss this action without prejudice and enter judgment
3  accordingly.

4  DATED this 10th day of July, 2007.

_____
Mary H. Murguia
United States District Judge